Manuel Ramirez, et al v. Christine Poulos, et al Doc. 27

FILED
CLERK U S DISTRICT COURT
FILED
DEC 13 2002
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**MANUEL RAMIREZ** and **GABRIELLA SALAS**,

Plaintiffs,

v.

**CHRISTINE POULOS**, ACTING CENTER DIRECTOR, ET AL.,

Defendants.

Case No. CV 02-2811-ER

**ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

ENTERED ON ICMS
DEC 16 2002
CV

**INTRODUCTION**

The Court has received, read and considered the papers filed in connection with Plaintiffs' Motion for Attorneys' Fees and Expenses. The Court has come to the following conclusions:

[1] Plaintiffs in this case, Manuel Ramirez and Gabriella Salas, are a married couple. Mr. Ramirez is a manufacturing engineer who came to the United States in February 1996 on an L-1 visa. In April 2000, his immigration status changed to H-1B. H-1B foreign workers are permitted to be in the United States in H-1B status for no more than six years. 8 U.S.C. § 1184(g)(4). Under the Immigration Act of 1990 ("IMMACT 90") and its implementing regulations, time spent in the United States under an L-1 visa counts toward the statutory six-year limit for H-1B purposes.

27

Dockets.Justia.com

[2] During the six years that Mr. Ramirez was tolling his H-1B status, he departed the United States several times, for a total of 271 days spent outside the United States. The issue in this case was whether those 271 days should count in the calculation of Mr. Ramirez's six-year limit, a concept known as "recapture." The Court granted summary judgment to the plaintiffs because the Court concluded that the Immigration and Naturalization Service ("INS") had unlawfully included the 271 days Mr. Ramirez was outside of the United States when calculating the six-year period in his case.

[3] Having won their motion for summary judgment, Plaintiffs filed this motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), which states that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, **unless the court finds that the position of the United States was substantially justified** or that special circumstances make an award unjust." 28 U.S.C. §2412 (d)(1)(A). The Supreme Court has defined "substantially justified" under the EAJA as "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Ninth Circuit has also ruled that "'substantial justification' under the EAJA means that the government's position must have a reasonable basis in law and fact." *Corbin v. Apfel*, 149 F.3d 1051, 1052 (9th Cir. 1998). Moreover, "the government has the burden of showing substantial justification for its position." *Ratnam v. I.N.S.*, 177 F.3d 742, 743 (9th Cir. 1999).

[4] The Court's rationale for granting summary judgment was based on the following:

[a] the plain language of 8 C.F.R. § 214.2(a)(h)(13)(iii) provides that the six-year period is based on time "spent . . . in the United States";

[b] the statute is silent on the issue of how the six-year period set forth in 8 U.S.C. § 1184(g)(4) should be determined;

[c] the INS had not been consistent in its position on this issue; and

[d] the INS failed to promulgate its new position properly.

//

[5] Plaintiffs relied heavily on a decision in the Southern District of California, *Nair v. Coultice*, 162 F. Supp. 2d 1209 (S. D. Cal. 2001) ("*Nair*"), in which the court was faced with the proper interpretation of the six-year period set forth in 8 U.S.C. § 1184(g)(4). Although the Court notes that *Nair* is not binding on this Court, it is nonetheless highly instructive. In *Nair*, the court granted summary judgment in favor of the plaintiff, as well as attorneys' fees. The *Nair* court, noting that the INS has at various times granted *and* denied recapture under this statute, held that:

> The statute is silent as to how the six-year period should be calculated. In general, if a statute is silent or ambiguous with respect to the specific issue, the agency's position on the matter is entitled to deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). However, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30 (1987) (internal citations omitted). *See also Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1345 (9th Cir. 1990) ("When an agency reverses a prior policy or statutory interpretation, its most recent expression is accorded less deference than is ordinarily extended to agency determinations."). Here, defendants do not deny that in the past the INS has tolled the six-year period during an alien's absence. **Because defendants have failed to provide any explanation for the INS' change in policy, the court is not bound to construe the statute as defendants urge.** *See Id.* (where an agency changes its position, the agency "will be required to show not only that its new policy is reasonable, but also to provide a reasonable rationale supporting its departure from prior practice") (emphasis added).

//

//

//

//

[6] Having reviewed again the Government' the Court finds that the Government has still not provided a valid explanation for a change in policy. The INS argued that it provided a reasonable rationale for its departure from prior practice in a "policy memorandum" that was "promulgated" by the INS in 1994. That memorandum adopted the standard that time spent outside of the United States would count ("be recaptured") only if it was "meaningfully interruptive of the alien's employment in the United States." The INS's position was that this "policy memorandum" explained the change in policy and that this Court, unlike the *Nair* court, should therefore defer to its judgment on this matter of interpretation under the *Chevron* standard for administrative law.

[7] The INS appears to be quite confused about its own internal memoranda. First, the so-called "policy memorandum" cited by the INS throughout its brief on summary judgment freely quotes from two separate memoranda, dated February 15, 1994, and March 9, 1994, respectively, *as though they are the same memorandum*. They are not: the February memorandum is a letter from Jacqueline Bednarz, the INS Chief of the Nonimmigrant Branch Office of Adjudications, to Jeffrey Rummel, an attorney. The March memorandum is correspondence from Lawrence Weinig, the Acting Associate Commissioner, to various INS officials.

[8] Second, neither memorandum is a "Policy Memorandum." They are both clearly "Correspondence Memoranda," as indicated by the header of each document. When INS Headquarters issues a "Policy Memorandum," it is clearly annotated in the header with a "P" after its designating numbers, and is referred to in the text as "policy." On "Correspondence Memoranda," which do not rise to the level of policy, the letter after the designating numbers is a "C." The memoranda cited by the INS are clearly marked with the letter "C", and use the phrases "the INS has adopted a position" and "it is the opinion of this office." In neither memorandum is the word "policy" used, as it would be if the memoranda were indeed policy memoranda.

//

//

[9] Most damning to the INS's position is the fact that the Administrative Procedures Act ("APA") requires publication in the Federal Register and a public comment period when a government agency wants to promulgate or change policy. 5 U.S.C. § 552 (a)(1). In this case, the INS has not promulgated the sentiments expressed in the 1994 correspondence and has never issued a policy statement regarding this issue as required by 5 U.S.C. § 552 (a)(1)(D):

(a) Each agency shall make available to the public information as follows:

**(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public--**

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

**(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency;** and

(E) each amendment, revision, or repeal of the foregoing.

[10] Moreover, the APA's protection clause mandates that "**a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.**" 5 U.S.C. § 552 (a)(1)(E).

//

//

//

[11] The INS argued that it promulgated a policy of "meaningful interruption of the alien's employment in the United States" as the standard for deciding recapture cases. But **the INS did not follow APA procedures for promulgation.** The INS was trying to sidestep the APA's transparency requirement. If the INS wanted to change its policy, it could have done so by following the procedures mandated by Congress through the APA. Until that happens, however, the Court should evaluate the plain language of the statute itself and the INS's own regulations interpreting the statute. *Dole v. United Steelworkers of America*, 494 U.S. 26, 42-43 (1990) ("because we find that the statute, as a whole, clearly expresses Congress' intention, we decline to defer to [the agency's] interpretation); *Board of Governors of the Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 368 (1986) ("the traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress"); *Chevron*, 467 U.S. at 842-843 ("if the intent of Congress is clear, that is the end of the matter").

[12] The plain language of the statute is clear: "in the case of a nonimmigrant described in section 1101(a)(15)(H)(i)(b) of this title, the period of authorized admission as such a nonimmigrant may not exceed 6 years." 8 U.S.C.A. § 1184 (g)(4). "Authorized admission" means "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

[13] Every time Mr. Ramirez left the United States, he entered the United States lawfully after inspection and authorization by an immigration officer. When he was out of the United States, he was not in any status at all under United States immigration laws. Only when he entered the country was he a nonimmigrant with authorized admission.

[14] Moreover, 8 C.F.R. § 214.2(a)(h)(13)(iii) provides that an H-1B alien "who has spent six years in the United States . . . may not seek extension, change status, or be readmitted to the United States . . . **unless the alien has resided and been physically present outside the United States** . . . for the immediate prior year." Federal courts "need not defer to the BIA's reading of an INS regulation if an 'alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's

promulgation.'" *Lal v. I.N.S.*, 255 F.3d 998, 1004 (9th Cir. 2001) (*quoting Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994) (in turn *quoting Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)). Here, the plain language of the regulation compels the conclusion that the six-year period only includes time spent physically present in the United States, as the *Nair* court held.

[15] The Government knew the APA requirements for changing its policy, knew its own regulations, knew about its own prior inconsistent decisions, and knew the plain language of the statute when it made its arguments to this Court. The Government also knew about *Nair*, and failed to provide a valid explanation for a change in policy.

[16] For the foregoing reasons, the Court finds that the Government has failed to carry its burden of demonstrating that its position was substantially justified, and the Court finds it appropriate to **GRANT** the motion for attorneys' fees.

[17] With regard to the fees, "the amount of fees awarded [under EAJA] shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. 2412 (d)(2)(A).

[18] Plaintiffs seeks fees and expenses in the amount of $14,758.08, based on a rate of $200 per hour for attorneys' time. Plaintiffs contend that they are entitled to payment of more than the statutory rate of $ 125 an hour "in light of the limited availability of qualified attorneys for the proceedings involved and the increased costs of living in San Diego, California."

[19] Although the maximum statutory rate may be adjusted for the general increase in the cost of living as measured by the Consumer Price Index, *see U.S. v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal.*, 190 F.3d 977, 984 (9th Cir.1999), plaintiffs have failed to cite any case law suggesting that it is appropriate to adjust the statutory rate upward based on the cost of living in a particular community. Moreover, even if such a factor were properly considered, plaintiffs have failed to present any evidence that would support their request for an increased rate, let alone a rate 60% above that of the maximum statutory rate.

[20] To be entitled to an increase in the statutory rate due to the limited availability of qualified attorneys, a plaintiff must demonstrate that the attorney's skills are not available elsewhere at the statutory rate, which plaintiffs have not done. *See Real Property Known as 22249 Dolorosa Street, Woodland Hills* at 985 (denying request for increase in statutory rate where claimants had submitted evidence that the market rates for similarly experienced counsel exceed the statutory rate, but did not demonstrate "that no suitable counsel would have taken on claimants' case at the statutory rate").

[21] In sum, the Court concludes that plaintiffs have failed to demonstrate that they are entitled to more than $125 dollars per hour for time expended by their attorneys. The Court has reviewed and analyzed the invoices submitted by the plaintiff, as well as the arguments made by both parties with regard to the reasonableness of the tasks performed and the time spent doing so. The Court has determined that reasonable attorneys' fees in this case are equal to a rate of $125 per hour multiplied by 39 hours. That result is $4,875. The Court also finds that reasonable expenses in this case equal: $118.08.

[22] For the reasons set forth above, the motion for attorneys' fees and expenses is **HEREBY GRANTED**. The Clerk shall enter judgment in favor of plaintiff in the form of attorneys' fees and expenses in the amount of $4993.08.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by United States mail or by telefax or by email, copies of this Order on counsel in this matter.

Dated: DEC 12 2002

EDWARD RAFEEDIE
Senior United States District Judge